UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 JUN 28 PM 1: 27

CLERK
BY_____ RC
DEPUTY CLERK

LISA ROTMAN, )
)
Plaintiff, )
)
v. )    Case No. 5:12-cv-67
)
PROGRESSIVE INSURANCE COMPANY )
and THE CONCORD GROUP, )
)
Defendants. )

**OPINION AND ORDER GRANTING IN PART DEFENDANTS' MOTION TO
EXCLUDE AND DENYING DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT**
(Doc. 31, 35)

Plaintiff Lisa Rotman brings this insurance coverage action seeking compensation under the uninsured motorist insurance policy she holds with Defendants Progressive Insurance Company ("Progressive"), as well as the excess coverage uninsured motorist insurance policy she holds with The Concord Group ("Concord") (collectively "Defendants"). Plaintiff alleges she was injured in a motorcycle crash in Sheldon, Vermont, after exiting the roadway to avoid oncoming vehicles which she claims were "crowding" the centerline and travelling at an excessive rate of speed in the opposite lane of travel.

Presently before the court are Defendants' motions to exclude the testimony of Plaintiff's expert witness, Robert Duhaime, and for summary judgment. (Docs. 31 & 35.) Defendants contend that Mr. Duhaime's opinion is unreliable and is based entirely on the observations of an interested witness. Defendants further contend that without Mr. Duhaime's opinion, Plaintiff cannot survive summary judgment. Plaintiff opposes the motions and requested an evidentiary hearing to address the *Daubert* issue raised by Defendants. An evidentiary hearing was held on April 11, 2013.

Plaintiff is represented by Brooks G. McArthur, Esq. and David J. Williams, Esq. Defendants are represented by Susan J. Flynn, Esq. and Barbara R. Blackman, Esq.

## I. Factual Background.

### A. Plaintiff's Supplemental Statement of Undisputed Facts.

Plaintiff filed a supplemental statement of undisputed material facts in addition to her response to Defendants' statement of undisputed facts. (Doc. 36-1.) Defendants have neither moved to strike Plaintiff's additional facts nor responded to them in any manner. Accordingly, it is difficult to discern whether Plaintiff's additional facts are in fact disputed.

In *Schroeder v. Makita Corp.*, 2006 WL 335680 (D. Vt. Feb. 13, 2006) (Sessions, C.J.), this court ruled that the Local Rules do not provide an opportunity for the nonmoving party to file a statement of *undisputed* facts at the summary judgment stage. *Id.* at *3. The court explained:

> Local Rule 7.1(c)(2) afforded Schroeder [the party opposing summary judgment] the opportunity to bring relevant disputed factual matters to the Court's attention, and he took full advantage of this opportunity by filing a 33-page response to Makita's statement of undisputed facts. The Local Rules make no provision for the second document filed by Schroeder. Furthermore, because a party's ability to withstand summary judgment depends on the existence of disputed facts, not undisputed ones, there is no need for Schroeder to establish undisputed facts at this stage of the litigation. Accordingly, the Court will strike Schroeder's Statement of Undisputed Facts, and Makita is under no obligation to respond to it. The Court will not consider the document in its disposition of the remaining motions.

*Id.* at *4. The court adopted this same approach in *Post v. Killington Ltd.*, 2010 WL 3323659, at *1 n.1 (D. Vt. May 17, 2010), as well as in *Boule v. Pike Industries, Inc.*, 2013 WL 711937, at *1-2 (D. Vt. Feb. 27, 2013), although in both instances it considered any additional facts that were both integral to the parties' arguments and undisputed.

Local Rule 56(b) (effective June 29, 2012) provides that "a party opposing summary judgment . . . must provide a separate, concise statement of disputed material facts." All material facts in the movant's statement of undisputed facts are deemed to be

admitted unless controverted by the opposing party's statement. The rule thus does not authorize the filing of a statement of additional undisputed facts by the non-moving party.

In this case, the court will follow *Schroeder*, *Post*, and *Boule*, and will disregard Plaintiff's additional facts unless it is clear from the parties' briefing that those facts are both material and undisputed.

### B.    Undisputed Facts.

On August 20, 2011, Plaintiff and Daren Hall, the son of Plaintiff's domestic partner,[1] were riding motorcycles southbound on Main Street in Sheldon, Vermont. Mr. Hall was traveling in the left-hand tire groove[2] of the southbound lane, closest to the centerline, while Plaintiff was riding behind him, staggered, in the right-hand tire groove furthest away from the centerline. While travelling southbound, Mr. Hall and Plaintiff approached a curve in the roadway.[3] Mr. Hall navigated the curve first and, after doing so, observed at least one oncoming vehicle driving northbound in the opposite lane of travel. He noted that the oncoming vehicle or vehicles appeared to be "crowding" the centerline without crossing into his lane of travel. He estimated that the vehicle or vehicles were "a foot if not closer" to the centerline. (Doc. 33-2 at 10-11.) Mr. Hall did not discern the color, make, model, or occupants of the vehicle or vehicles, however, he observed that the vehicles were not sports utility vehicles or vans. After the oncoming

---

[1] Plaintiff considers Mr. Hall to be a family member.

[2] "Tire grooves" are travel pathways that are typically worn smoother than the remainder of the roadway surface.

[3] At the *Daubert* hearing, the court viewed Mr. Duhaime's post-accident video of the roadway which depicts a straightaway that approaches the curve in question and from which the curve is clearly visible. Despite the parties' varying descriptions, the accident did not take place on a "turn" in the roadway but rather it took place on a curved incline on a winding road. *See Sakoc v. Carlson*, 2012 WL 3929904, at *6 (D.Vt. Sept. 6, 2012) ("In assessing whether there are triable issues of fact, the court may rely on facts as depicted in an unaltered video recording, even when such facts differ from those presented by a party"); *see also Scott v. Harris,* 550 U.S. at 380 ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

vehicle or vehicles passed him, Mr. Hall looked in his rearview mirror and observed that Plaintiff's motorcycle had left the roadway. He did not witness the accident and cannot testify as to what caused it.

The Vermont State Police ("VSP") responded to the accident scene. VSP Trooper Cory Lozier completed an accident report and created a not-to-scale diagram indicating Plaintiff's crash location on the western shoulder of the road. Trooper Lozier did not take photographs or otherwise memorialize the scene. Based on his observations, Trooper Lozier estimated that Plaintiff's motorcycle travelled approximately seventy-five yards after exiting the road and before crashing. Trooper Lozier did not observe skid marks on the road or make an estimate as to the speed of the vehicles although he indicated that Plaintiff's motorcycle appeared to be travelling at a low rate of speed at the time of the crash. Plaintiff has no independent recall of the events leading up to and culminating in her injuries.

Plaintiff disclosed Robert Duhaime, a retired VSP Detective Sergeant, as an expert in accident reconstruction. Mr. Duhaime prepared a two-page "Expert Accident Reconstruction Opinion" (the "Expert Report") dated January 19, 2012. (Doc. 33-1.) In his Expert Report, Mr. Duhaime initially opined that "this motorcycle accident was caused by two unidentified speeding vehicles traveling left of center when meeting [Plaintiff's] motorcycle causing [her] to go off the road to avoid a collision." *Id.* at 1-2. He noted that there was damage to the northbound lane of travel and he "found the timing sequence of events as experienced by the lead motorcyclist [Mr. Hall] to be correct." *Id.* at 2. He opined that Plaintiff:

> was confronted with a sudden dangerous situation of being in a left hand curve on the motorcycle and meeting vehicles traveling at a high rate of speed and the lead vehicle being partially on [Plaintiff's] side of the road causing [Plaintiff's motorcycle] to drive away from the danger of a head on collision, straighten the motorcycle, thus reducing the turning radius resulting in the motorcycle going off the road resulting in the accident and subsequent injuries.

(Doc. 33-1 at 2.) Mr. Duhaime bases his opinions on "my experience, training and education together with my inspection and evaluation of the accident scene, my review of

the police reports and interviews with witnesses . . . including [Mr.] Hall, the lead motorcyclist." *Id.* at 1.

Although Plaintiff agreed that Mr. Duhaime's Expert Report was a "complete and accurate" disclosure of his expert opinion, it was later revealed that Mr. Duhaime was under the misimpression that the oncoming vehicle or vehicles had crossed into Plaintiff's line of travel while passing Mr. Hall. When this misunderstanding was corrected, Mr. Duhaime's opinion remained unchanged.

Mr. Duhaime testified that determining speed, distance, and time are three critical variables in accident reconstruction. In this case, he was unable to make exact measurements or establish timing sequences because the investigating VSP troopers failed to document or otherwise memorialize the accident scene. He therefore did not measure any distances at the scene so as to correlate them with the supposed positions of the relevant vehicles traveling at various speeds. Mr. Duhaime has not examined Plaintiff's motorcycle or any photographs of it. He concedes that Plaintiff "technically" violated 23 V.S.A. § 1081[4] at the time of the accident by driving off the roadway.

Mr. Duhaime's conclusions regarding the specific facts of the incident are derived from Mr. Hall. As Mr. Duhaime explained, "[w]e don't know what happened at that accident other than what that witness [Mr. Hall] saw when he was riding and facing those cars" (Doc. 32 at ¶ 19) and "I don't know what startled [Plaintiff], but something startled her about those vehicles, and she lost control." (Doc. 33-6 at 48.)

Plaintiff is covered for bodily injury damages caused by an "uninsured motorist" by Progressive, with excess coverage from Concord. Plaintiff's insurance policy with Progressive provides coverage as follows:

---

[4] 23 V.S.A. § 1081 provides in relevant part that "No person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions, having regard for the actual and potential hazards then existing. In every event speed shall be controlled as necessary to avoid colliding with any person, vehicle or other object on or adjacent to the highway." 23 V.S.A. § 1081(a). Subsection (d) of that statute states that: The driver of every vehicle shall, consistent with the requirements of subsection (a) of this section, drive at an appropriate, reduced speed . . . when approaching and going around a curve, when approaching the crest of a hill, when travelling upon any . . . winding roadway, and when special hazard exists." 23 V.S.A. § 1081(d).

**INSURING AGREEMENT - UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE**

> If **you** pay the premium for this coverage, **we** will pay for damages that an **insured person** is legally entitled to recover from the owner or operator of an **uninsured motor vehicle** or **underinsured motor vehicle** because of **bodily injury**:
>
>> 1. sustained by an **insured person**;
>>
>> 2. caused by an accident; and
>>
>> 3. arising out of the ownership, maintenance, or use of an **uninsured motor vehicle** or **underinsured motor vehicle**

(Doc. 37-7 at 16.) An "uninsured motor vehicle" is defined by Progressive as:

> [A] land motor vehicle or trailer of any type:
>
> . . .
>
>> d. whose owner or operator cannot be identified and that causes an accident resulting in **bodily injury** or **property damage**, provided that the **insured person**, or someone on his or her behalf, reports the accident to the police or civil authority within 24 hours or as soon as practicable after the accident. If there is no physical contact with the **uninsured motor vehicle**, the facts of the accident must be proved by competent evidence, which may include testimony, under oath, of an **insured person**.

*Id.* at 17.

Plaintiff's excess insurance policy with Concord, in a section titled "Uninsured Motorists Coverage – Vermont," provides coverage as follows:

> We will pay compensatory damages which an "insured" is legally entitled to recover from the owner or operator of an "uninsured motor vehicle" because of:
>
>> 1. "Bodily injury" sustained by an "insured" and caused by an accident[.]

(Doc. 37-6 at 36.) An "uninsured motor vehicle" is defined by Concord as:

> [A] land motor vehicle or trailer of any type:
>
> . . .
>
>> 3. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in "bodily injury" or "property damage" without hitting:

a. You or any "family member";

b. A vehicle which you or any "family member" are "occupying";

c. "Your covered auto"; or

d. The property of an "insured".

If there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proved. We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or any similar coverage.

*Id.* at 36-37. In an email exchange between Plaintiff's counsel and Concord's counsel, Concord stated that "[t]o confirm, Concord does not intend to assert that the hit-and-run provision of the uninsured motorist section requires physical contact between the vehicles." (Doc. 37-4 at 1.)

### C. Disputed Facts.

The parties dispute whether Mr. Hall observed one or two oncoming vehicles based upon a discrepancy between Trooper Lozier's report of his interview with Mr. Hall at which Mr. Hall purportedly indicated a single oncoming vehicle and Mr. Hall's deposition testimony in which he repeatedly testified that there were two vehicles.

The parties also dispute the speed at which the oncoming vehicle or vehicles were travelling. Defendants contend that there is no evidence regarding the speed of any of the vehicles, pointing to Mr. Hall's testimony that he did not check his own speedometer at the time, could not testify as to Plaintiff's speed, could not determine the oncoming vehicles' speed with any accuracy, and did not observe the oncoming vehicles doing anything illegal. Plaintiff counters that when questioned by Plaintiff's counsel at his deposition, Mr. Hall testified that he believed the oncoming vehicles were speeding, that they were driving "nose to tail" (Doc. 33-2 at 20) and that he estimates that he was travelling between thirty-five to forty eight miles per hour at the time of the accident.

Finally, the parties dispute whether Plaintiff's evasive action of driving off the roadway was a reasonably necessary reaction to avoid a potential collision with the oncoming vehicle or vehicles. Defendants point out that Mr. Hall, who was closer to the

centerline, was able to negotiate the curve without losing control of his motorcycle or taking any evasive action other than moving further away from the centerline in the southbound lane of travel. Plaintiff contends that her evasive action was reasonably necessary because Mr. Hall's testimony reveals that the oncoming vehicles were speeding and crowding the centerline while entering into a turn which created the reasonable perception in a southbound traveler that the vehicles were about to pass into that lane of travel.

## II.    Legal Analysis and Conclusions.

### A.    Standard of Review.

Summary judgment must be granted when the record shows there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. "The moving party bears the initial burden of showing why it is entitled to summary judgment." *Salahuddin v. Goord*, 467 F.3d 263, 272 (2d Cir. 2006). "When the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). In determining whether there is a genuine issue as to any material fact, the trial court "must resolve all ambiguities and draw all inferences in favor of the non-moving party." *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 145 (2d Cir. 2002). The non-moving party must do more than show "some metaphysical doubt" as to the material facts. *Harlen Assocs. v. Inc. Vill. of Mineola*, 273 F.3d 494, 499 (2d Cir. 2001) (noting that "mere speculation and conjecture is insufficient to preclude the granting of the motion"). A genuine issue of material fact exists "where the evidence, viewed in the light most favorable to the nonmoving party, is such that a reasonable jury

could decide in that party's favor." *Id.* at 498. "There is no material fact issue only when reasonable minds cannot differ as to the import of the evidence before the court." *Commander Oil Corp. v. Advance Food Serv. Equip.*, 991 F.2d 49, 51 (2d Cir. 1993).

In this case, the court applies the substantive law of Vermont, the forum state, because federal subject matter jurisdiction is based on diversity of citizenship. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938); *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 443 (2d Cir. 2005).

### B.     Whether Mr. Duhaime's Expert Testimony Should Be Excluded.

Defendants move to exclude Mr. Duhaime's expert testimony, contending that he is merely serving as a mouthpiece for Daren Hall and adds no specialized knowledge that would render his opinion that of an expert. Even if the court finds some level of specialized knowledge, Defendants urge the court to find Mr. Duhaime's opinions unreliable.

### 1.     Standard Governing Admissibility of Expert Testimony.

Federal Rule of Evidence 702 governs the admissibility of expert testimony and provides:

> A witness who is qualified as an expert by knowledge, skill, experience, training or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. Thus, a witness who is qualified as an expert will be permitted to testify if his or her testimony "will assist the trier of fact to understand the evidence or to determine a fact in issue." *United States v. Lumpkin*, 192 F.3d 280, 289 (2d Cir. 1999). To be admissible, expert testimony must be both relevant and reliable. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993). The proponent of expert testimony

has the burden of proving its admissibility. *See* Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702 ("[T]he admissibility of all expert testimony is governed by the principles of Rule 104(a). Under that Rule, the proponent has the burden of establishing that the pertinent admissibility requirements are met by a preponderance of the evidence.").

The *Daubert* Court tasked the trial courts with performing a "gatekeeping role" to ensure that only evidence that is "based on scientifically valid principles" will be presented by an expert witness. *Daubert*, 509 U.S. at 597. In *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Court extended *Daubert*'s gatekeeping "not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' or 'other specialized' knowledge." *Id.* at 141. A district court's discretion under Rule 702 is broad, *Stagl v. Delta Air Lines, Inc.*, 117 F.3d 76, 81 (2d Cir. 1997), but it "must 'make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265-66 (2d Cir. 2002) (quoting *Kumho Tire Co.*, 526 U.S. at 152).

### 2. Mr. Duhaime's Expert Qualifications.

Mr. Duhaime has an Associate's Degree in criminal justice from Champlain College and a Bachelor's Degree from Middlebury College. From 1966 until 1983, he worked for the VSP as a "uniform trooper" and as a "Criminal Investigator." (Doc. 33-1 at 4.) He has operated his company, Special Investigations, Inc., since 1983. He has completed at least four trainings in accident reconstruction over the course of his career.

In his deposition, Mr. Duhaime testified that he most recently served as an expert in accident reconstruction in a 2012 Vermont state court case.[5] In his curriculum vitae, he lists his most recent expert witness testimony as taking place in 2005 wherein he

---

[5] Mr. Duhaime testified that in *State v. Vieira*, he created an accident reconstruction tape which depicted a victim who was wearing dark clothes and walking a brown dog at night to help the jury determine the visibility of the victim during the accident. According to Mr. Duhaime, the trial judge excluded the accident reconstruction videotape but allowed Mr. Duhaime to testify.

"[q]ualified as an expert in accident reconstruction in Federal Court" and in 1997 wherein he "[q]ualified as an expert in accident reconstruction and investigations in Vermont." (Doc. 33-1 at 4.) In his deposition, Mr. Duhaime acknowledged more recent expert witness testimony, but noted that he did not have a list of such testimony because he had been "doing this for 30 years, and I haven't had any need to keep a list, because I don't testify that often. I may go five or ten years without testifying." (Doc. 33-6 at 35.) It is thus unclear whether the court has been presented with an accurate description of Mr. Duhaime's experience as an expert witness. *See* Fed. R. Civ. P. 26(a)(2)(B)(v) (requiring expert disclosure to include "a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition[.]").

Although in their motions, Defendants challenge Mr. Duhaime's qualifications to testify as an expert, at the court's *Daubert* hearing Defendants clarified that their motion to exclude focused on the *content* of Mr. Duhaime's opinions rather than on his qualifications to render them. The court will thus assume *arguendo* that Mr. Duhaime is qualified to testify as an expert witness in accident reconstruction and, for purposes of summary judgment, will determine only whether the opinions he offers are within the scope of his expert disclosure and otherwise admissible.

### 3. The Scope of Plaintiff's Expert Witness Disclosure.

Defendants assert that Plaintiff's expert witness disclosure does not encompass all of the opinions Mr. Duhaime offered in the course of the court's *Daubert* hearing. For example, at the hearing, Mr. Duhaime testified that he had specialized knowledge regarding the normal operations of a motorcycle and was competent to assess Plaintiff's motorcycle riding ability. Under Fed. R. Civ. P. 26(a)(2)(A)-(B), a party "must disclose to the other parties the identity of any witness it may use at trial to present evidence" and these disclosures must include an expert report containing "a complete statement of all opinions the witness will express and the basis and reasons for them." Only two such opinions on motorcycle operation were disclosed. First, Mr. Duhaime opined in his Expert Report that: "There was a reasonable distance between the motorcycles." (Doc. 33-1 at 2.) And second, he noted that Plaintiff was attempting to "drive away from the

danger of a head on collision, straighten the motorcycle, thus reducing the turning radius resulting in the motorcycle going off the road resulting in the accident and subsequent injuries." *Id.* Defendants had the opportunity to depose Mr. Duhaime regarding his two motorcycle related opinions and cannot claim any prejudice to their ability to challenge them. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 642 (7th Cir. 2008) ("The purpose of Rule 26(a)(2) is to provide notice to opposing counsel-before the deposition-as to what the expert witness will testify, and this purpose would be completely undermined if parties were allowed to cure deficient reports with later deposition testimony.") (internal citations omitted); *Gustafson v. American Family Mut. Ins. Co.*, 2012 WL 5904048, at *8 (D. Colo. Nov. 26, 2012) (excluding proffered expert testimony where plaintiff intended to "provide testimony from [expert] that is outside the scope of [the expert's] expert report," but instead arose from questioning during the expert's deposition). Mr. Duhaime's further opinions regarding Plaintiff's competence in motorcycle operation were not disclosed and cannot be considered.

    4.    **Whether Mr. Duhaime's Expert Opinions are Admissible.**

In order to be admissible, Mr. Duhaime's expert opinions must reflect "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. Under Rule 702, the testimony must be "based on sufficient facts or data[;]" must be "the product of reliable principles and methods;" and the expert must have "reliably applied the principles and methods to the facts of the case." *Id.*

To the extent Mr. Duhaime merely repeats or recasts the testimony of Daren Hall in order to arrive at a theory of causation, he is not testifying as an expert witness based upon specialized knowledge, but rather is acting as a conduit for another witness's testimony in the guise of an expert's opinion. *See* Doc. 32 at ¶ 19 (opining that, "[w]e don't know what happened at that accident other than what that witness [Mr. Hall] saw when he was riding and facing those cars."). Courts have held that it is improper to use an expert "as a conduit for hearsay testimony." *Hutchinson v. Groskin*, 927 F.2d 722, 725 (2d Cir. 1991); *see also United States v. Johnson*, 587 F.3d 625, 635 (4th Cir. 2009)

(noting that it is "appropriate for district courts to recognize the risk that a particular expert might become nothing more than a transmitter of testimonial hearsay and exercise their discretion in a manner to avoid such abuses"); *United States v. Lundy*, 809 F.2d 392, 395 (7th Cir. 1987) (finding in an arson case that "even if some of [the expert's] testimony is based on his expertise, his conclusion that it was arson is actually based on hearsay testimony about [the defendant's] motives, plan and opportunities. [The defendant] is correct to suggest that 'expert' testimony based solely on hearsay and third-party observations that are adequately comprehensible to lay people would be improper to admit under Rule 702.").

It is equally improper to permit an expert to merely *speculate* as to a cause. *See* Doc. 33-6 at 48 ("I don't know what startled [Plaintiff], but something startled her about those vehicles, and she lost control."). This poses the risk of confusing and misleading the jury as it lends the imprimateur of the expert's qualifications and a stamp of credibility to what is otherwise rank speculation. *See Daubert*, 509 U.S. at 590 (noting that expert opinions that reflect "subjective belief or unsupported speculation" must be excluded); *see also Weisgram v. Marley Co.*, 528 U.S. 440, 454 (2000) (holding evidence that is speculative inadmissible because it "contributes nothing to a 'legally sufficient evidentiary basis.'") (citation omitted).

After setting aside the use of Mr. Duhaime's expert testimony as a conduit for the testimony of Daren Hall and his speculation that something startled Plaintiff, there is little left in the way of an expert opinion. Mr. Duhaime did not actually perform an "accident reconstruction" using the three critical variables of speed, distance, and time which he testified are essential to that task. It is also undisputed that Mr. Duhaime took no measurements and performed no calculations that would allow him to estimate the speed or position of the various vehicles at the time of the accident. Although, post-accident, he examined the roadway and the manner on which vehicles drove on it, he has not and cannot "relate back" the information he gleaned to the time of the accident based upon specialized knowledge. Rather, like a layperson he can only speculate that conditions at the time of the accident may have been similar. As for his remaining opinions, at best,

Mr. Duhaime can opine that it is not uncommon for cars to speed in the area of the accident, that at the time he observed it, the condition of the pavement was such that it would tend to push motorists to the centerline in the northbound lane of travel, that the curve in question was clearly visible from the preceding straightaway, and that in negotiating the curve, a motorcyclist may perceive oncoming traffic to encroach upon the centerline with the potential to cross over into the opposing lane of travel. In performing its "gatekeeping" function, the court must ensure that these are actually reliable expert opinions based upon specialized knowledge instead of the potentially admissible observations of a fact witness (such as an investigator, police officer, or bystander) which will then be endorsed at trial by a witness who will be presented to the jury as an "expert."

In evaluating proffered expert witness's testimony, the district court's inquiry under *Daubert* must focus not on the expert's conclusions, but on whether the methodology underpinning those conclusions is reliable. *See Daubert*, 509 U.S. at 590. "*Daubert* enumerated a list of factors that, while not constituting a 'definitive checklist or test,' a district court might consider" in assessing reliability. *Nimely v. City of New York*, 414 F.3d 381, 396 (2d Cir. 2005) (quoting *Daubert*, 509 U.S. at 593-94). These factors include "whether a theory or technique had been and could be tested, whether it had been subjected to peer review, what its error rate was, and whether scientific standards existed to govern the theory or technique's application or operation." *Id.* Although the inquiry is flexible, it requires a "sufficiently rigorous analytical connection between the methodology and the expert's conclusions." *Id.* In analyzing whether an expert's analysis is unreliable, district courts should examine "the facts on which the expert relies, the method by which the expert draws an opinion from those facts, and how the expert applies the facts and methods to the case at hand." *Amorgianos*, 303 F.3d at 267. Minor flaws of reasoning or modifications in an "otherwise reliable method" should not render an expert's opinion inadmissible. *Id.*

"A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997). "If

the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts." Advisory Committee Notes, 2000 Amendments, Fed. R. Evid. 702.

In formulating his expert opinions, Mr. Duhaime made certain observations of the accident scene which would be helpful to the jury to the extent they accurately describe the condition of the pavement, the path of travel, and the typical manner in which vehicles navigate the curve in question at the time of the accident. There is no aspect of these opinions, however, that is dependent upon any specialized knowledge or experience or is part of an "accident reconstruction." A layperson travelling to the scene would see and notice the same things. Moreover, Mr. Duhaime employed no "reliable principles and methods," Fed. R. Evid. 702(c), and thus inevidently did not apply such reliable principles and methods to the facts of this case. Fed. R. Evid. 702(d). There is no known rate of error associated with Mr. Duhaime's opinions and no means to review or test them. He did not use any of the variables he testified were essential to accident reconstruction, and any methodology he did employ has not been subjected to peer review. Mr. Duhaime's original opinion was based upon a fundamental misunderstanding of the operative facts; he believed the oncoming vehicles had crossed into Plaintiff's lane of travel. When that misunderstanding was corrected, Mr. Duhaime's opinion remained unchanged. There are thus no apparent scientific standards governing Mr. Duhaime's theory or technique because a substantial change in the underlying facts yields no corresponding change in the opinions based thereon. In the absence of any of the hallmarks of reliability, "there is simply too great an analytical gap" between Mr. Duhaime's post-accident observations "and the opinion proffered." *Joiner*, 522 U.S. at 146.

For the foregoing reasons, the court hereby GRANTS IN PART Defendants' motion to exclude the expert opinions of Robert Duhaime. Mr. Duhaime may testify as a fact witness regarding his observations of the scene and regarding any admissible photographs and videos he took of it. Assuming he is qualified as an expert, he may also

testify as an expert witness as to the appropriate distance between Mr. Hall and Plaintiff's motorcycle and the manner in which a motorcycle normally navigates a curve in the roadway which were disclosed in his Expert Report.

### C. Whether Plaintiff Must Establish Her "Miss and Run" Claim Through A Disinterested Witness.

Defendants argue that summary judgment is appropriate because, without Mr. Duhaime's testimony, Plaintiff has not proffered admissible evidence from a disinterested witness that her injuries were proximately caused by oncoming traffic. Plaintiff counters that there is no statutory or policy requirement that her evidence come from a disinterested witness and this court has no authority to impose one.

As a threshold issue, Defendants correctly observe that the Vermont Supreme Court has not affirmatively recognized a "miss and run" cause of action under Vermont's uninsured/underinsured ("UIM") motorist statute, 23 V.S.A. § 941. The Vermont trial courts, however, have held that "a 'hit and run' accident contemplated by 23 V.S.A. § 941(a) encompasses circumstances where the negligence of an absconding and unidentified driver causes injury, even in the absence of a physical collision involving the hit-and-run driver's car." *Grant v. New Hampshire Indem. Co.*, Docket No. 14-1-02 Bncv (July 17, 2003) (collecting cases). This court need not decide the issue because Defendants concede, for purposes of summary judgment, that the court may proceed as if a "miss and run" cause of action exists. *See* Doc. 33 at 16 ("Assuming, for purposes of this motion only, and reserving all other rights, that "hit" means "miss and that a "miss and run" UIM cause of action exists under Vermont law, it is nonetheless clear that . . . [the evidence] does not satisfy Plaintiff's burden of proving entitlement to UIM benefits."). The court thus decides only whether Defendants' policies can be construed to require disinterested witness corroboration as a condition precedent to "miss and run" coverage.[6]

---

[6] Defendants point out that some states which recognize a "miss and run" claim impose a requirement of corroboration of the incident from a disinterested witness. *See, e.g., Mesa-Toney v. Mazda Motor of America, Inc.*, 1998 WL 812391, at *1-2 (E.D. La. Nov. 18, 1998)

Defendants' policies provide coverage for "miss and run" claims and do not require the corroboration of a "disinterested" witness to prove them. Instead, both policies merely require "competent evidence." Defendant Progressive's policy provides coverage when a vehicle "whose owner or operator cannot be identified" causes an accident with the insured and provides that, "[i]f there is no physical contact with the uninsured motor vehicle, the facts of the accident must be proved by competent evidence, which may include testimony, under oath, of an insured person." (Doc. 37-7 at 17.) Defendant Concord's policy similarly provides coverage when a vehicle "whose operator or owner cannot be identified . . . hits or . . . causes an accident . . . without hitting" provided that "[i]f there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proved. We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or any similar coverage." (Doc. 37-6 at 36-37.)  The requirement of "competent evidence" can only be interpreted to require a "disinterested witness" if the policies, themselves, support that construction. Here, they do not.

Under Vermont law, "[t]he proper construction of language in an insurance contract is a question of law[.]" *Trinder v. Connecticut Attorneys Title Ins. Co.*, 2011 VT 46, ¶ 11, 189 Vt. 492, 496, 22 A.3d 493, 496. "An insurance policy must be construed

---

(disinterested witness required where insurer did not provide coverage for miss-and-run claims, but Louisiana uninsured motorist statute required coverage for miss-and-run claims "provided that the injured party bears the burden of proving, by an independent and disinterested witness, that the injury was the result of the actions of the driver of another vehicle whose identity is unknown"). Defendants contend that, "[i]t is appropriate for a court, as a matter of common law, to create a corroboration requirement when it creates "miss and run" liability[.]" (Doc. 33 at 18-19) (internal citations omitted).  There is no common law right to insurance coverage for an accident caused by an uninsured or underinsured motorist. As a result, there is no existing common law upon which the court could graft such a requirement. Instead, because the right is purely statutory and because Vermont's UIM statute does not impose a "disinterested witness" requirement, this court has no authority to impose such a requirement as a purported exercise in statutory construction. *See State v. Racine*, 329 A.2d 651, 653 (Vt. 1974) ("If the meaning of a statute is plain and its provisions are susceptible of but one interpretation, the courts, in construing the statute, may not take into consideration the injustice which may be caused thereby.  If the provisions of a statute are unfair and unjust, the remedy is by a change of the law itself, to be effected by the legislature, and not by judicial action in the guise of interpretation.").

according to its terms and the evident intent of the parties as expressed in the policy language. Disputed terms should be read according to their plain, ordinary and popular meaning." *City of Burlington v. Nat'l Union Fire Ins. Co.*, 655 A.2d 719, 721 (Vt. 1994) (internal citations omitted). Pursuant to Vermont law, courts "do not read terms into the contract unless they arise by necessary implication[,]" and "may not insert terms into an agreement by implication unless the implication arises from the language employed or is indispensable to effectuate the intention of the parties." *Downtown Barre Development v. C & S Wholesale Grocers, Inc.*, 2004 VT 47, ¶ 9, 177 Vt. 70, 75, 857 A.2d 263, 267.

Defendants' policies do not define the term "competent evidence." "[W]here a disputed term in an insurance policy is susceptible to two or more reasonable interpretations, the ambiguity must be resolved in favor of the insured." *Associated Elec.*, 669 A.2d at 1183. In *Holmquist v. Farm Family Cas. Ins. Co.*, 800 F. Supp. 2d 305 (D. Me. 2011), the district court recently addressed the proper interpretation of "competent evidence":

> [T]he [insurance policy] states: "If there is no physical contact with the hit-and-run vehicle the facts of the accident must be proved. We will only accept competent evidence which may include the testimony, under oath, of a person making claim under this or any similar coverage."

> Thus, unless Plaintiff can prove with "competent evidence" that the operator of an unidentified hit and run vehicle contributed to the Accident, the parties agree that Plaintiff has no triable issue of fact to survive Defendant's motion for summary judgment or a motion to dismiss at trial pursuant to Federal Rule of Civil Procedure 50(a).

*Id.* at 309 n.2 (internal citations omitted). In *Holmquist*, the plaintiff testified in a pretrial hearing that "while he was proceeding up a hill within the right lane of two lanes heading in his same direction, a truck passed him in the adjacent left lane, 'crowding' him and leading him to move farther to the right whereupon he ran off the pavement and overturned his truck." *Id.* at 309. The plaintiff died before trial and the insurer moved for summary judgment on the basis that there was no competent evidence to prove the facts of the accident. The court concluded that whether there was competent evidence turned on whether the plaintiff's prior statement qualified as admissible evidence.

Concluding that Plaintiff's prior testimony was inadmissible, the court granted summary judgment. The court thus construed the requirement of "competent evidence" to mean any evidence that would be admissible at trial. *Id.; see also Conklin v. Heymann*, 305 A.2d 820, 823 (N.J. Super. L. 1973) ("[W]e come to the interpretation of the words 'corroborated by competent evidence.' Does it mean that there had to be a disinterested witness? If this is so, it would open the door wide for collusion and fraud, the very things sought to be protected against. We construe this phrase to include such things as the on-the-scene investigation by the police and timely reporting to the insurance company[.]").

This court predicts that the Vermont Supreme Court, like the *Holmquist* court, would interpret the term "competent evidence" in an insurance policy to mean any evidence that would be admissible at trial. The court's prior decisions support such a conclusion. *See Ketchum v. Town of Dorset*, 2011 VT 49, ¶¶ 14-16, 190 Vt. 507, 510-11, 22 A.3d 500, 505-06 (construing a rule requiring a reviewing court to determine "whether there is any competent evidence to justify the [decision]" to mean "that the court's role was simply to determine if there was adequate evidence to support the . . . decision"); *State v. Bogie*, 217 A.2d 51, 54 (Vt. 1966) ("To render the evidence competent on the issue for which it is offered it must afford a basis for some rational inference of the ultimate fact sought to be proved."). Such an interpretation is also fully consistent with Defendants' policies which state that the testimony under oath of the insured (the quintessential interested witness) falls within the definition of "competent evidence." Thus, according to their "plain, ordinary and popular meaning," *City of Burlington*, 655 A.2d at 721, Defendants' policies do not require corroboration by a disinterested witness as a condition precedent to coverage for a "miss and run" accident, nor is such a requirement "indispensable to effectuate the intention of the parties." *Downtown Barre*, 2004 VT 47, at ¶ 9, 177 Vt. at 75, 857 A.2d at 267. The question is therefore not whether Mr. Hall is a "disinterested witness," but whether he is competent to provide admissible evidence at trial.

Under the Federal Rules of Evidence, "[e]very person is competent to be a witness unless these rules provide otherwise. But in a civil case, state law governs the witness's

competency regarding a claim or defense for which state law supplies the rule of decision." Fed. R. Evid. 601. Under Vermont law, "[a] person shall not be disqualified as a witness in a civil cause or proceeding by reason of his interest therein as a party or otherwise. However, his interest or connection may be shown to affect his credibility as a witness." 12 V.S.A. § 1601. In this case, any interest Mr. Hall may have in the outcome of the trial or any relationship he may have to Plaintiff is not a disqualification to his status as a witness but is merely fodder for cross-examination. He may therefore testify regarding the events of the accident provided his testimony is otherwise admissible.

### 1. Whether Plaintiff's Evidence of Causation is Sufficient.

Defendants contend that Plaintiff cannot survive summary judgment because there is no evidence that her accident was caused by the oncoming vehicle or vehicles or that she would have collided with one or both of those vehicles but for her evasive action. Plaintiff counters that she has proffered sufficient evidence for a jury to conclude that the oncoming vehicles were speeding as they crowded the centerline on a curved incline in the road, thus making it reasonable for her to take evasive action.

Under Vermont law, negligence requires "a legally cognizable duty owed by the defendant to the plaintiff, a breach of that duty, that the breach was a proximate cause of plaintiff's injury, and damages." *Fagnant v. Foss*, 2013 VT 16, ¶ 18 & n.2 (noting that courts sometimes describe the elements of "duty" and "breach" collectively as "negligence"). The essential element of causation requires:

> evidence that defendant's unreasonable conduct caused the plaintiff's harm. Specifically, causation requires both "but-for" and proximate causation. Thus, the plaintiff must first show that the harm would not have occurred "but for" the defendant's conduct such that the "tortious conduct [was] a necessary condition for the occurrence of the plaintiff's harm." The plaintiff must also show that the defendant's negligence was "legally sufficient to result in liability," such that "liability attaches for all the injurious consequences that flow [from the defendant's negligence] until diverted by the intervention of some efficient cause that makes the injury its own.

*Collins v. Thomas*, 2007 VT 92, ¶ 8, 182 Vt. 250, 253-54, 938 A.2d 1208, 1211 (internal citations omitted). "Although proximate cause 'ordinarily' is characterized as 'a jury issue,' it may be decided as a matter of law where 'the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way.'" *Collins*, 2007 VT 92, at ¶ 8, 182 Vt. at 254, 938 A.2d at 1211 (quoting *Estate of Sumner v. Dep't of Soc. & Rehab. Servs.*, 649 A.2d 1034, 1036 (Vt. 1994)).

Examined in the light most favorable to Plaintiff, the admissible evidence permits a reasonable inference that Plaintiff left the roadway in response to two oncoming vehicles driving nose-to-tail within a foot of the centerline at an excessive rate of speed. Mr. Hall's testimony, alone, is sufficient to establish these facts. *State v. Dunham*, 2013 VT 15, ¶ 11 ("[E]ven a lay person is entitled to testify as to visual estimation of speed[.]") (quoting *State v. Barnhill*, 601 S.E .2d 215, 218 (N.C. Ct. App. 2004)). Under Vermont law, "[n]o person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions," 23 V.S.A. § 1081(a), and "[t]he driver of every vehicle shall . . . drive at an appropriate, reduced speed . . . when approaching and going around a curve, when approaching the crest of a hill, when traveling upon any narrow or winding roadway, and when special hazard exists." *Id.* § 1081(d). "Proof of violation of a safety statute or regulation creates a prima facie case of negligence." *Dalmer v. State*, 811 A.2d 1214, 1221 (Vt. 2002) (identifying traffic laws as among "[t]he statutes or regulations that we have held have this effect"). Accordingly, if a jury finds Mr. Hall's testimony credible, the jury may further find that his testimony establishes that the oncoming vehicles were violating a safety statute and were prima facie negligent.

Correspondingly, the "sudden emergency doctrine" affords a plaintiff a degree of latitude in establishing that his or her own evasive conduct was reasonable. *See Stevens v. Nurenburg*, 97 A.2d 250, 256 (Vt. 1953). Under the "sudden emergency doctrine" "when an individual is confronted with a sudden peril through no fault of her own, she is not bound to exercise the same degree of care as when she has time for reflection."

*Hamblin v. United States*, 327 F. Supp. 2d 315, 323 (D. Vt. 2004); Restatement (Second) Torts § 296 ("In determining whether conduct is negligent toward another, the fact that the actor is confronted with a sudden emergency which requires rapid decision is a factor in determining the reasonable character of his choice of action.").

> The law appreciates that one who is confronted with a sudden peril, through no fault of his own, may do some things which, after it is all over, may seem to have been improper or even foolish. It gives him a reasonable opportunity to recover from the shock naturally resulting from such a situation and affords him a reasonable opportunity to regain control of himself and his car, before he can be charged with contributory negligence. The question is, what would or might a prudent man, in the same circumstances, do and this question is for the jury.

*Frenier v. Brown*, 80 A.2d 524, 528 (Vt. 1951).

Daren Hall has testified that he was "startled" by the oncoming vehicles and took evasive action. Plaintiff argues that there is a reasonable inference that she was similarly "startled" and points out that the unique configuration of the roadway contributed to the impression that the oncoming vehicles were not only encroaching upon the centerline but had the potential to enter the opposing lane of travel. Although Defendants strenuously and not unpersuasively argue that Plaintiff's evasive action was excessive under the circumstances, where, as here, there is a close question on the issue of causation, the issue is generally left to the jury. *See, e.g., Verchereau v. Jameson*, 167 A.2d 521, 526 (Vt. 1961) ("The determination of the rate of speed of a motor vehicle, where there is varying testimony or conflicting inferences, presents an issue of fact for the jury. The acceleration of an automobile, though at a lawful rate, may be dangerous. Whether the speed was excessive under the prevailing circumstances so as to constitute negligence is usually a question for the jury."). The instant case is simply not one in which "the proof is so clear that reasonable minds cannot draw different conclusions or where all reasonable minds would construe the facts and circumstances one way." *Collins*, 2007 VT 92, at ¶ 8, 182 Vt. at 254, 938 A.2d at 1211. Accordingly, because the court cannot determine the issue of causation as a matter of law but must leave that determination for the jury, Defendants' motion for summary judgment is DENIED.

## CONCLUSION

For the reasons stated above, the court GRANTS IN PART and DENIES IN PART Defendants' motion to exclude Mr. Duhaime's testimony and DENIES Defendants' motion for summary judgment.

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 28th day of June, 2013.

*/s/ Christina Reiss*

Christina Reiss, Chief Judge
United States District Court